## Baeder-Adamson Co. v. F. W. Tunnell & Co., Inc.

*Equity practice—Vendor and vendee—Production of books and papers for inspection.*

On a bill in equity by vendee against vendor to recover overcharges paid under a contract for the purchase of the entire output of a glue factory for two years on the basis of costs plus 2 cents profit per pound and for an account, on the ground that statements furnished to vendee by vendor on which payments had been made contained overcharges, there having been no final settlement of the accounts and vendee in making payments having relied upon vendor's written statement that books, records, etc., were open to inspection, vendee, on a rule to show cause, may obtain an order on vendor to produce for inspection such books, papers and records as are necessary to verify the accounts of glue manufactured during the period that the contract between them was in operation.

Rule for production and inspection of books, etc.   C. P. No. 5, Phila. Co., June T., 1921, No. 9658.

*G. W. Harkins, Jr.,* for plaintiff; *H. P. Brown,* for defendant.

MARTIN, P. J., Jan. 10, 1923.—On June 6, 1919, Baeder, Adamson & Co. contracted to purchase one-half of the output of glue that F. W. Tunnell & Co., Inc., manufactured between July 1, 1919, and July 1, 1920, and between July 1, 1920, and July 1, 1921. The glue was to be billed at per pound cost of manufacture as shown by the books of account of the Tunnell Company, based upon all charges entering into the manufacture, plus cost per pound of stock used and a fixed profit of 2 cents per pound. Payments were to be made on the 10th of each month for the value of glue delivered the preceding month.

The copartnership of Baeder, Adamson & Co. was incorporated and the contract assigned to the corporation.

On July 16, 1920, Tunnell & Co. sent a statement of account and wrote that with the closing of their accounts for the year they were presenting the figures from the operation of the glue department, and that, combining the costs arrived at as indicated in the statement, a production figure of 26.51 cents per pound was shown, and the accounting department was instructed to render final billing on this basis. It was stated that the cost arrived at was about 2 cents per pound in addition to expectation, and that the books, records and compilations were all open to inspection for verification of the accounts if required.

On Feb. 28, 1921, the contract was terminated by mutual consent. On April 11, 1921, Tunnell & Co. wrote to the Baeder-Adamson Co., submitting billing of deliveries of glue between July 1, 1920, and March 31, 1921.

There were figures contained in the letter, and it was stated that, combining the unit costs arrived at by those figures, the production cost was .315696 per pound, and the accounting department was instructed to bill in accordance, 2 cents per pound profit to be added. Plaintiff was again informed that books, records and compilations were all open to inspection for verification of these accounts if required.

On Aug. 30, 1921, the Baeder-Adamson Co. filed the bill of complaint in this case, alleging that during the time the contract was in force the prices paid were agreed to be the approximate rates, it being the intention at the end of the first year to ascertain the exact cost of the glue; and when the statement was presented in July, 1920, purporting to show the cost, it was represented to the Baeder-Adamson Co. that the statement was correct, and, relying thereon, payment was made of the amount appearing to be due, but that the statement was incorrect and false and did not show the true cost of the glue, but a cost in excess thereof, there being various overcharges and

omissions of credits that should have been allowed. A similar allegation was made as to the statement submitted on April 11, 1921. There was a prayer in the bill for an accounting.

An answer filed averred that the statements submitted to plaintiff were correct, with the exception of administration expenses that were omitted, but should have been charged. It was denied that an authorized agent of defendant represented the statements to be correct; that payments were made in reliance upon such representation, or that the statements were false or incorrect in any respect.

Defendant averred that a thorough examination of the books, records and compilations was made on behalf of plaintiff for the purpose of verifying the statements, and denied that the statements contained any items of overcharge or omissions of credit. It was also averred in the answer that there had been a final settlement between the parties for the first year of the contract, and that plaintiff was indebted to defendant in the sum of $82,220.55, with interest.

Exceptions were filed to the answer because there was no admission or denial that the books showing the transaction of the business were in the possession of defendant. A stipulation was thereupon filed, in which counsel agreed that the bill might be considered amended by adding an averment that the books kept by the defendant during the first year of the contract were kept in the same manner as those used during the eight months of the second year, and that they contained the same character of charges, the same items and the same omissions of credit. It was also agreed that the answer should be amended by naming specifically the books in the possession of defendant showing cost of manufacture during the first year. Defendant denied that plaintiff is entitled to the production or inspection of these books, because the bill of complaint fails to specify with sufficient particularity the nature and amount of overcharges and omissions of credit, or the basis for alleging that certain items were overcharges and not proper apportionment of expenses; and defendant claims that plaintiff is not entitled to credit for by-products, and that the bill does not aver that the overcharges or omissions of credit were the result of mistakes of fact. Defendant also avers that, no notice of objection to the account having been previously made, defendant was induced to agree to a termination of the contract, and plaintiff is, therefore, estopped from opening the account stated for the first year.

On motion of plaintiff's counsel, a rule was entered to show cause why defendant should not produce the books for inspection. Testimony was taken in support of the rule. It appears from the evidence that plaintiff refused to pay the balance demanded by defendant, claiming to set off overcharges made by defendant during the period that the contract was in force; that the president of the plaintiff company and the auditor visited the place of business of defendant and made a perfunctory examination of the method of accounting and did not discover any error to substantiate the accusations made in the bill of complaint; but that a report made by a firm of expert accountants employed by plaintiff to examine the books and verify the statement submitted of the glue manufactured during the last eight months the contract was in operation indicates errors and overcharges which lead to a reasonable belief, as it is admitted that the method of accounting during the first year was similar to that employed for the period of the second year, that the items to which plaintiff objects are not lawful charges upon a legal construction of the contract. In view of the fact that the contract did not terminate at the end of the first year, that there has been no final settlement of accounts, and that in making payments plaintiff was entitled to rely upon the state-

3 D. & C.

ments by defendant that the books and papers were open for inspection at the convenience of plaintiff, defendant should permit an examination of the books to verify the items contained in the statement of July 16, 1920.

And now, to wit, Jan. 10, 1923, it is ordered that defendant produce for the inspection of plaintiff the cash disbursement book, operating account of the general ledger, journal, part of accounts, pay-roll cards and original invoices, together with such other books, papers and records as are necessary for verification of the accounts of glue manufactured during the period that the contract between plaintiff and defendant was in operation.